Gail C. Lin (SBN 212334)
RAISNER ROUPINIAN LLP
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: gcl@raisnerroupinian.com

Jack A. Raisner (*pro hac vice*)
René S. Roupinian (*pro hac vice*)
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: jar@raisnerroupinian.com
Email: rsr@raisnerroupinian.com

*Attorneys for Plaintiffs, on behalf of themselves and all others similarly situated*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB BURDECKI and ZAKARY STRANGE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> INTREPID STUDIOS, INC., STEVEN SHARIF, RYAN OGDEN, AARON BARTELS, THERESA FETTE, ROBERT D. DAWSON, and TFE GAMES HOLDING, LLC, <br><br> Defendants. | CASE NO. 3:26-cv-00728-AGS-VET <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT FOR:** <br><br> **(1) VIOLATION OF WARN ACT 29 U.S.C. § 2101, ET SEQ.,** <br><br> **(2) VIOLATION OF CALIFORNIA LABOR CODE § 1401 ET. SEQ.,** <br><br> **(3) VIOLATION OF CALIFORNIA LABOR CODE § 201 ET. SEQ.,** <br><br> **(4) VIOLATION OF OHIO REVISED CODE § 4113.15,** <br><br> **(5) VIOLATION OF ERISA § 404,** <br><br> **(6) FRAUD (CALIFORNIA LAW AND SIMILAR STATE LAWS), and** <br><br> **(7) CONVERSION (CALIFORNIA LAW AND SIMILAR STATE LAWS)** |

Plaintiffs Jacob Burdecki and Zakary Strange ("Plaintiffs") allege on behalf of themselves and the putative class of those similarly situated as follows:

## NATURE OF THE ACTION

1. Defendant, Intrepid Studios, Inc., is a company in the gaming and entertainment industry based in San Diego, California, which was developing the game *Ashes of Creation*. Defendants Steven Sharif, Ryan Ogden, Aaron Bartels, Theresa Fette, Robert D. Dawson and TFE Games Holdings, LLC (together with Intrepid Studios, Inc., "Defendants") were and are variously owners, leaders and successors of the company.

2. Plaintiffs and the other similarly situated former employees worked for Defendants until about February 2, 2026, when they were notified that they were terminated effective the next day.

3. Plaintiffs, along with an estimated 200 other similarly situated employees, were terminated without 60 days' advance written notice.

4. The employees were not paid for their final weeks of work.

5. The employees were not paid for their accrued paid time off (i.e., vacation).

6. The employees discovered after their terminations that Defendants had failed to pay health insurance premiums, despite continuing to deduct premium amounts from their paychecks, causing coverage lapse, and subjecting them to pay out of pocket for expenses they justifiably believed were covered. The employees are now saddled with medical debt for care they received as early as November 2025, due to Defendants' secret diversion of the payroll amounts for their own use.

7. Plaintiffs bring this action on behalf of themselves and the other similarly situated former employees who worked for Defendants and who were terminated without cause, as part of, or as the result of, the mass layoffs, plant closings, or termination of a covered establishment ordered by Defendants on or about February 2, 2026 and within thirty (30) days of that date, and who were not provided 60 days' advance written notice of their terminations by Defendants, as required by the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C.

SECOND AMENDED CLASS ACTION COMPLAINT

§ 2101 *et seq.*, and the California Labor Code § 1401 *et. seq.* ("CAL-WARN Act") (together, the "WARN Acts").

8. Plaintiffs, on behalf of themselves and all similarly situated employees, seek to recover damages and penalties from Defendants pursuant to California Labor Code §§ 201, 203, 206, 221, 226, 227.3, and 558.1.

9. Plaintiffs, on behalf of themselves and all similarly situated employees, seek to be paid their accrued paid time off ("PTO") and unpaid wages for all employees under the laws of California and Ohio.

10. Plaintiffs, on behalf of themselves and all similarly situated employees, seek amounts, under California and Ohio state law, due to Defendants' failure to pay wages for their final weeks of work, as well as for unused paid time off, and penalties for the non-issuance of a final paystub, and waiting time.

11. Plaintiffs, on behalf of themselves and all similarly situated employees, seek damages for Defendants' failure to maintain company health insurance for the employees, while continuing to withhold premiums from employee paychecks. The employees alternatively seek redress for the lapsed health insurance under ERISA, California fraud and conversion law, and similar state fraud and conversion laws.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367, 29 U.S.C. § 2104(a)(5).

13. Venue in this Court is proper pursuant to 29 U.S.C. § 2104(a)(5).

14. The Court has jurisdiction over Defendants because they did business in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

SECOND AMENDED CLASS ACTION COMPLAINT

## THE PARTIES

### *Plaintiffs*

15.     Plaintiff Jacob Burdecki was employed by Defendants as a Gameplay Engineer I and worked remotely, and reported to and received assignments from Defendants' facility located at 3721 Valley Centre Drive, Suite 200, San Diego, California (the "Facility") from January 2025 until his termination on or about February 2, 2026.

16.     Plaintiff Burdecki is a resident of the state of Ohio.

17.     Plaintiff Zakary Strange was employed by Defendants as a technical director and worked at Defendants' facility located at 3721 Valley Centre Drive, Suite 200, San Diego, California (the "Facility") from November 2024 until his termination on or about February 2, 2026.

18.     Plaintiff Strange is a resident of the state of California.

19.     Plaintiffs were both terminated without 60 days' written notice.

20.     Plaintiffs were both terminated without cause.

21.     Until about February 2, 2026, Plaintiffs and the similarly situated employees were employed by Defendants and worked at or reported and received assignments from the Facility.

22.     On information and belief, an estimated 200 similarly situated former employees who worked at or reported to the Facility, as defined by the WARN Act and CAL-WARN Act, were also terminated on or about February 2, 2026, without 60 days' written notice.

### *Defendants*

23.     Upon information and belief, Defendant Intrepid Studios, Inc. ("Intrepid Studios" or "Intrepid"), is a California registered corporation with its headquarters in San Diego, California.

24.     Upon information and belief, Intrepid Studios was co-founded by Steven Sharif in 2015 to produce video games and related products in the entertainment industry.

25.     Upon information and belief and at all relevant times, the following individuals were investors/owners of Intrepid Studios: Steven Sharif ("Sharif"), Ryan Ogden ("Ogden"), Aaron Bartels ("Bartels"), Theresa Fette ("Fette"), and Robert D. Dawson ("Dawson") (together, Sharif, Ogden, Bartels, Fette and Dawson are collectively referred to as the "Individual Defendants").

26.     Upon information and belief, and at all relevant times, Defendant Sharif was the

SECOND AMENDED CLASS ACTION COMPLAINT

founder, Chief Executive Officer and Game Director of Intrepid Studios, and owned 4.888% of its shares.

27.    Defendant Sharif had the authority to hire and fire employees, set employee schedules, and determine their rates of pay.

28.    As Game Director, Defendant Sharif's approval was required for virtually all substantive decisions in the development of *Ashes of Creation*.

29.    On information and belief, although Defendant Sharif purported to take temporary leave from his CEO duties in October 2025 for health reasons, he continued his day-to-day direction of game development.

30.    On information and belief, although Defendant Sharif formally resigned from his CEO position in mid-January 2026, he continued to be the conduit between management and the other individual defendants, as described further *infra*.

31.    On information and belief, on January 20, after his formal resignation, Defendant Sharif was still drafting proposed layoff messaging to the employees and deciding how certain employees' departures would be characterized for purposes of unemployment insurance.

32.    After his formal resignation, Defendant Sharif continued to communicate with employees on Slack.

33.    On information and belief, Defendant Sharif diverted company funds for his personal use, including travel, luxury goods, dining, and entertainment.

34.    On information and belief, Defendant Sharif was presented with a list of unexplained personal transactions with company funds for a mid-2025 audit.  Defendant Sharif did not dispute the veracity of the transactions.

35.    Upon information and belief, and at all relevant times, Defendant Ogden was associated with Defendant Dawson as an accountant and held 1.155% of Intrepid Studios shares.

36.    Upon information and belief, Defendant Fette held .237% of Intrepid Studio shares.

37.    Upon information and belief, Defendant Bartels held .237% of Intrepid Studios shares.

SECOND AMENDED CLASS ACTION COMPLAINT

38.     Upon information and belief, Defendant Dawson was a secured lender and holder of 65.688% of Intrepid Studio shares, having provided Intrepid Studios outstanding loans or equity capital infusions totaling approximately $80 million.

39.     On or about January 7, 2026, Defendant Dawson amended a UCC financing statement securing all the assets belonging to Intrepid Studios and changing the name of the secured lender from Robert Dawson to TFE Games Holdings, LLC ("TFE").

40.     Defendant TFE is a Delaware limited liability company, which, on information and belief, Dawson controlled and created to receive and deploy Intrepid's assets.

### *The Investor-Owner Defendants*

41.     On information and belief, Intrepid did not have a formal corporate board of directors.

42.     On information and belief, for most of the company's existence, Defendant Sharif and John Moore were de facto officers who made corporate decisions.

43.     On information and belief, beginning around October 2025, Defendants Dawson, Ogden, Bartels and Fette (the "Investor-Owner Defendants") purported to convene a formal "board" of some sort, but did not observe corporate board formalities.

44.     On information and belief, the Investor-Owner Defendants influenced corporate decisions by virtue of their ownership interests starting before October 2025, including giving directions to Defendant Sharif and Intrepid's management, regarding employee terminations.

45.     In discussions with senior management in the fall of 2025, Defendant Sharif referred to the Investor-Owner Defendants as a "board of investors," and thereafter management referred to them as "the board."

46.     On information and belief, beyond using the "board" nomenclature, senior management did not see any company records indicating that a formal board of directors existed or that any of the Investor-Owner Defendants were officers or employees of the company.

47.     On information and belief, board meeting "notices" were simply messages between the Investor-Owner Defendants and Defendant Sharif about their availability to get together.

SECOND AMENDED CLASS ACTION COMPLAINT

48.    On information and belief, in a Statement of Information Corporation filed with the State of California on December 30, 2025, Defendant Ogden affirmed that that none of the Investor-Owner Defendants were directors or officers of the company.  The document identified only Defendant Sharif and John Moore as Intrepid's officers, and Defendant Sharif as a sole director.

49.    On information and belief, Defendant Dawson was Intrepid's primary sponsor.

50.    On information and belief, the company was largely dependent on Defendant Dawson's funding, which was frequently needed to make payroll, since 2022, if not earlier.

51.    On information and belief, in March 2025 Defendant Dawson directed Defendant Ogden to open a company bank account at Pathway Bank, which Defendant Dawson owns.  At Defendant Dawson's direction, that account became Intrepid's primary expense account.

52.    On information and belief, by July 2025, Defendant Ogden was negotiating on Intrepid's behalf with the company's lender, CommerceWest Bank, regarding payment plans on the company's loans.

53.    On information and belief, by November 2025 at the latest, Defendant Ogden controlled company funds and had the ability to cause the company to make or withhold payments.

### *Shutdown of the Company*

54.    On information and belief, Defendants recognized in the fall of 2025 that Intrepid's illiquidity made employee mass layoffs necessary.

55.    Around Thanksgiving 2025, the Investor-Owner Defendants decided to start cutting employees and so informed Intrepid's Bryan Langford, Executive Producer and Head of Studio, and Jacob Beucler, Director of Production.

56.    On information and belief, a presentation drafted by Defendant Bartels stated that Intrepid had "WAY too much debt," "no path to profitability" and more than $7 million in "past due opex bills" with no "go forward value to the game."  It identified these points as "justification" for a "foreclosure" and a "wipe/fresh start," including the termination of more than 100 employees with "no severance, PTO payout, etc."

57.    On December 29, 2025, the Investor-Owner Defendants instructed Langford to

SECOND AMENDED CLASS ACTION COMPLAINT

terminate 125 employees by 5:00 p.m. on December 31. They told Langford that Intrepid would not pay these employees accrued PTO or severance. Langford refused to carry out these terminations, citing WARN violations, among other concerns.

58. On information and belief, Defendant Sharif negotiated with the Investor-Owner Defendants about the timing of the proposed layoffs and associated payments to the employees. Defendants delayed the layoffs.

59. In multiple discussions during January 2026, the Investor-Owner Defendants instructed Langford to terminate large numbers of Intrepid employees, admonishing him not to raise legal objections to the terminations.

60. In a January 2026 call, Defendant Bartels told Langford that if Langford "played good" with the planned terminations, Bartels would consider paying out the terminated employees' PTO, but otherwise, Bartels didn't "know what would happen" to the PTO.

61. By early 2026, the Investor-Owner Defendants had introduced to management their idea of moving Intrepid's assets, and certain of its employees, into a "NewCo," which, upon information and belief, referred to Defendant TFE.

62. On information and belief, around the same time, the Investor-Owner Defendants also stopped paying amounts owed to certain Intrepid vendors and contractors.

63. Defendant Bartels, in a January 8 message to the other Investor-Owner Defendants, encouraged them to not pay severance or PTO to separated employees, stating that "[a]ny suit against us will be against the old entity that will have no value in a week."

64. On information and belief, about ten employees were separated in mid-January 2026, most of them terminated for purportedly poor "fit."

65. On information and belief, after his formal resignation in mid-January, Defendant Sharif negotiated with the Investor-Owner Defendants over a possible return to his CEO post.

66. Though he had formally resigned, Defendant Sharif continued to exert influence over employee matters, including in discussions about whether to pay health insurance premiums.

67. Defendant Sharif participated in the discussions with the Investor-Owner

-8-                    SECOND AMENDED CLASS ACTION COMPLAINT

Defendants about launching "NewCo" and whether the company could continue building *Ashes of Creation*.

68.    On information and belief, after his formal resignation, Defendant Sharif purported to secure health insurance coverage that would be available to employees during a prospective transition to "NewCo."

69.    On information and belief, *Ashes of Creation* began generating revenue around December 2025, from the online gaming platform Steam.  By the end of January, Steam was due to pay Intrepid approximately $4 million generated from the game.

70.    Defendant Ogden had told CommerceWest Bank that the Steam payment would be used to pay down CommerceWest Bank's seniormost note.

71.    On information and belief, by December 2025, Defendant Dawson was planning to foreclose on Intrepid's assets.

72.    On information and belief, in late December, TFE's counsel told Defendant Dawson to notify CommerceWest Bank of the foreclosure, in which event the $4 million Steam payment would go to CommerceWest Bank.

73.    On information and belief, the Investor-Owner Defendants decided not to notify CommerceWest Bank of the foreclosure, and to divert the $4 million to TFE, despite CommerceWest Bank's senior lien.

74.    Upon information and belief, on or about January 16, 2026, Dawson, with the knowledge of the other Investor-Owner Defendants, caused TFE to foreclose, acquiring ownership of all the assets belonging to Intrepid, including its shares, in a UCC Article 9 private sale.

75.    On information and belief, on January 15, Defendant Sharif alerted CommerceWest Bank of TFE's foreclosure and the plan to divert the $4 million from CommerceWest Bank to TFE.

76.    On information and belief, upon Mr. Sharif's notification, CommerceWest Bank seized the Steam revenue, leaving Intrepid unable to make payroll.

77.    On information and belief, the Defendants caused Intrepid to issue WARN Act notices on or about January 31, 2026, and  commence the termination of the employees, including

-9-                    SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs and similarly situated employees, on or about February 2, 2026, without 60 days' advance notice.

78.    Defendants failed to provide sixty (60) days' advance written notice (or any advance notice at all) to Plaintiffs and the similarly situated employees of their impending terminations.

79.    In terminating the employees, the Defendants neither paid employees for their final two weeks of work nor paid their accrued paid time off.

### *Lapsed Health Insurance*

80.    Intrepid provided employees with access to health insurance as an employee benefit.

81.    For employees who elected health coverage, Intrepid withheld from their paychecks the cost of the insurance premium that they had to contribute.

82.    In the fall of 2025, Intrepid was due to begin the 2026 renewal process with the broker for Intrepid's employee health insurance.

83.    Senior Human Resources Generalist Midori Roecks repeatedly communicated to Defendant Sharif that the renewal process needed to be initiated.

84.    Around December 2025, the broker raised concerns about termination of coverage because of nonpayment of required amounts.  Roecks sent numerous reminders to Defendant Sharif and John Moore about the broker's concerns.

85.    Defendant Sharif did not respond to Roecks' communications about the health insurance payments.

86.    On information and belief, Defendants were notified again in early January 2026, at the latest, that Intrepid's employee health coverage would lapse for non-payment.

87.    On information and belief, the Investor-Owner Defendants used the health insurance issue as a bargaining chip in their negotiations with Defendant Sharif about his possible return as CEO, indicating to him they would only pay the premiums if he returned as CEO.

88.    On information and belief, despite continuing to withhold the employees' share of the health insurance payments from their paychecks (which hid from them Intrepid's non-payment of their premiums), Defendants caused the coverage to lapse, while the unsuspecting employees

SECOND AMENDED CLASS ACTION COMPLAINT

continued to accumulate bills for medical treatment and medications.

89.    Employees learned only belatedly that they were not covered by insurance for bills incurred as early as November 2025, through February 2026, which unreimbursed charges they have had to pay, nor have they been repaid their misappropriated premium contributions.

## WARN ACT CLASS ALLEGATIONS UNDER 29 U.S.C. § 2104(a)(5)

90.    Plaintiffs are aggrieved representative "person(s)" authorized by Congress to "sue either for [themselves] or for other persons similarly situated, or both[.]" 29 U.S.C. § 2104(a)(5).

91.    Plaintiffs bring this representative action on behalf of themselves and all other similarly situated former employees of Defendants who worked at or reported to the Facility and were terminated without cause beginning on or about February 2, 2026 and within 30 days of that date, or as the reasonably foreseeable consequence of the mass layoff or plant closing ordered by Defendants on that date, pursuant to 29 U.S.C. § 2104(a)(5).

92.    The persons in the Class identified above ("WARN Class Members"), are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

93.    On information and belief, the identity of the WARN Class Members and their recent residence addresses is contained in the books and records of Defendants.

94.    On information and belief, the rate of pay and benefits that were being paid by Defendants to each WARN Class Member at the time of his/her termination is contained in Defendants' books and records.

95.    There are questions of law and fact common to the WARN Class Members that predominate over any questions solely affecting individual members of the Class, including but not limited to:

(a)    whether the Class Members were employees of the Defendants who worked at or reported to the Facility;

(b)    whether Defendants terminated the employment of the Class Members without cause on their part and without giving them 60 days' advance written notice; and

SECOND AMENDED CLASS ACTION COMPLAINT

(c)    whether Defendants paid the Class members 60 days' wages and benefits as required by the WARN Act.

96.    Plaintiffs' claims are typical of those of the WARN Class. Plaintiffs, like other WARN Class members, worked at or reported to the Facility and were terminated without cause on or about February 2, 2026, due to the mass layoffs ordered by Defendants.

97.    Plaintiffs will fairly and adequately protect the interests of the WARN Class. Plaintiffs have retained counsel competent and experienced in complex class actions, including the WARN Act and employment litigation.

98.    Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the WARN Class predominate over any questions affecting only individual members of the WARN Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of WARN Act litigation where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendants, and damages suffered by individual WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

99.    Concentrating all the potential litigation concerning the WARN Act rights of the members of the WARN Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the WARN Act rights of all the members of the Class.

100.    Plaintiffs intend to send notice to all members of the WARN Class to the extent required by Rule 23.

101.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy – particularly in the context of WARN Act litigation, where the individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendants.

## CALIFORNIA WARN CLASS ALLEGATIONS, CAL. LABOR CODE § 1401

102.    Plaintiffs bring the Second Claim for Relief for violation of Labor Code § 1401 on behalf of themselves and a class of similarly situated persons pursuant to Labor Code § 1404 and Federal Rules of Civil Procedure, Rule 23(a) and (b), who worked at or were assigned and reported to Defendants' Facility and were terminated without cause beginning on or about February 2, 2026 (the "CAL WARN Class")

103.    The persons in the CAL WARN Class identified above ("CAL WARN Class Members") are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

104.    On information and belief, the identity of the members of the class and the recent residence address of each of the CAL WARN Class Members is contained in Defendants' books and records.

105.    On information and belief, the rate of pay and benefits that were being paid by Defendants to each CAL WARN Class Member at the time of his/her termination is contained in the books and records of Defendants.

106.    Common questions of law and fact exist as to members of the CAL WARN Class, including, but not limited to, the following:

   (a)    whether the members of the CAL WARN Class were employees of the Defendants;

   (b)    whether Defendants unlawfully terminated the employment of the members of the CAL WARN Class without cause on their part and without giving them 60 days advance written notice in violation of the CAL WARN Act; and

   (c)    whether Defendants unlawfully failed to pay the CAL WARN Class members 60 days wages and benefits as required by the CAL WARN Act.

107.    CAL-WARN Class Plaintiff Zakary Strange's claims are typical of those of the CAL-WARN Class.  The CAL-WARN Class Plaintiff, like other CAL WARN Class members, worked at or reported to one of the Facility and were terminated on or about February 2, 2026, due

-13-          SECOND AMENDED CLASS ACTION COMPLAINT

to the terminations ordered by Defendants.

108.   CAL WARN Class Plaintiff Strange will fairly and adequately protect the interests of the CAL WARN Class.  The CAL WARN Class Plaintiff has retained counsel competent and experienced in complex class actions on behalf of employees, including the CAL WARN Act, the federal WARN Act, other similar state laws, and employment litigation.

109.   Class certification of these Claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the CAL WARN Class predominate over any questions affecting only individual members of the CAL WARN Class, and because a class action superior to other available methods for the fair and efficient adjudication of this litigation  – particularly in the context of CAL WARN Class Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate Defendants, and damages suffered by individual CAL WARN Class members are small compared to the expense and burden of individual prosecution of this litigation.

110.   Concentrating all the potential litigation concerning the CAL WARN Act rights of the members of the Class in this Court will obviate the need for unduly duplicative litigation that might result in inconsistent judgments, will conserve the judicial resources and the resources of the parties and is the most efficient means of resolving the CAL-WARN Act rights of all the members of the Class.

111.   The CAL WARN Class Plaintiff intends to send notice to all members of the CAL-WARN Class to the extent required by Rule 23.

**SUCESSOR LIABILITY ALLEGATIONS AS TO TFE**

112.   Upon information and belief, Defendant TFE impliedly or expressly assumed Intrepid's liability to the employees when it foreclosed on all the assets belonging to Intrepid.

113.   Defendant TFE represented to the Clark County, Nevada District Court that it is a "successor-in-interest" to Intrepid and that, without Intrepid's records, Defendant TFE would not be able to "fulfill its obligations under the WARN Act, among other obligations."

SECOND AMENDED CLASS ACTION COMPLAINT

114.     Upon information and belief, Dawson caused TFE to foreclose on Intrepid's assets with the intention of continuing Intrepid's operations and launching it game, *Ashes of Creation*. Shortly before the foreclosure, he told the other Board Members that "we need to terminate all [employees] and hire employees we are keeping in the new entity" and that "the game needs another 14 mil to get to a successful launch."

115.     Upon information and belief, Defendant Intrepid Studios cannot provide adequate relief to the Plaintiffs.

116.     Upon information and belief, Defendant TFE was either on notice of Intrepid's WARN and CAL WARN liability when foreclosing on Intrepid's assets, or caused that liability after the foreclosure.  Before the foreclosure, Dawson discussed with the other Board Members the potential WARN liability resulting from the layoffs.

### FIRST CLAIM FOR RELIEF
### FEDERAL WARN ACT, 29 U.S.C. § 2104 et seq.
#### (*Asserted against Defendants Intrepid and TFE only*)

117.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

118.     At all relevant times, Defendants Intrepid and TFE employed more than 100 employees who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

119.     At all relevant times, Defendants Intrepid and TFE were an "employer," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639.3(a)(1).

120.     At all relevant times, Defendant Intrepid was part of Defendant TFE.  Defendant Intrepid was not independent from Defendant TFE: Defendant Intrepid and Defendant TFE shared common ownership and shared personnel policies with respect to the employees; Defendant Intrepid was dependent on Defendant TFE; and Defendant TFE exercised de facto control over Defendant Intrepid, particularly with respect to the decision to terminate the employees.

SECOND AMENDED CLASS ACTION COMPLAINT

121.    At all relevant times, Plaintiffs and the other similarly situated former employees were employees of Defendants Intrepid and TFE as that term is defined by 29 U.S.C. §2101.

122.    On or about February 2, 2026, and within 30 days thereafter, Defendants Intrepid and TFE ordered mass layoffs and/or plant closing at the Facility, as that term is defined by 29 U.S.C. § 210l(a)(2).

123.    The mass layoffs at the Facility resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty of Defendants Intrepid and TFE's employees as well as more than 33% of Defendants' workforce at the Facility, excluding "part-time employees," as that term is defined by 29 U.S.C. § 2l01(a)(8).

124.    Plaintiffs and the Class Members were terminated by Defendants Intrepid and TFE without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoffs ordered by Defendants at the Facility.

125.    Plaintiffs and the Class Members are "affected employees" of Defendants Intrepid and TFE, within the meaning of 29 U.S.C. § 210l(a)(5).

126.    Defendants Intrepid and TFE were required by the WARN Act to give Plaintiffs and the Class Members at least 60 days' advance written notice of their terminations.

127.    Defendants Intrepid and TFE failed to give Plaintiffs and the Class members written notice that complied with the requirements of the WARN Act.

128.    Plaintiffs, and each of the Class Members are "aggrieved employees" of Defendants Intrepid and TFE as that term is defined in 29 U.S.C. § 2104 (a)(7).

129.    Defendants Intrepid and TFE failed to pay Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, incentives, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to make the pension and 401(k) contributions and provide employee benefits under ERISA, for 60 days from and after the dates of their respective terminations.

130.    In the alternative, Defendant TFE assumed Intrepid's liabilities when it foreclosed on Intrepid's assets, intending to continue Intrepid's operations and with notice of the WARN

SECOND AMENDED CLASS ACTION COMPLAINT

violation.

131.    On information and belief, Intrepid is unable to provide adequate relief to the WARN Class members.

132.    As such, Defendant TFE is liable for the WARN violation as a successor to Intrepid.

**SECOND CLAIM FOR RELIEF**
**CALFORNIA WARN ACT, CAL. LAB. CODE, § 1401 et seq.**

133.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs.

134.    Plaintiffs bring the Second Claim for Relief for violation of Lab. Code § 1401 on behalf of themselves and a class of similarly situated persons pursuant to Lab. Code § 1404 and Federal Rules of Civil Procedure 23(a) and (b), who worked at, reported to, or received assignments from the Facility and were terminated without cause on or about February 2, 2026 and within 30 days of that date (the "CAL-WARN Class").

135.    All putative class members in this action are members of the WARN Class, the CAL WARN Class, or both.

136.    Pursuant to Lab. Code § 1401(b), "'[e]mployer' means any person . . . who directly or indirectly owns and operates a covered establishment.   A parent corporation is an employer as to any covered establishment directly owned and operated by its corporate subsidiary."

137.    Upon information and belief and at all relevant times, Defendants were an employer of the CAL-WARN Class as that term is defined by Lab. Code § 1401(b) that directly or indirectly owned and operated at least one covered establishment in San Diego, California that employed an estimated 200 employees.

138.    Defendants violated CAL-WARN by terminating Plaintiffs' employment and the employment of other similarly situated employees pursuant to a "mass layoff," "relocation" or "termination" as defined in Lab. Code § 1401 on or about February 2, 2026 or thereafter,  without giving written notice at least 60 days before the order took effect to: (1) the employees affected by the order and (2) the Employment Development Department and local officials.

SECOND AMENDED CLASS ACTION COMPLAINT

139. As a result of Defendants' violation of Lab. Code § 1401, Plaintiffs and the other similarly situated employees are entitled to 60 days of back pay under Lab. Code § 1402(a-b).

140. In the alternative, Defendant TFE assumed Intrepid's liabilities when it foreclosed on Intrepid's assets, intending to continue Intrepid's operations and with notice of the CAL WARN violation.

141. On information and belief, Intrepid is unable to provide adequate relief to the CAL WARN Class members.

142. As such, Defendant TFE is liable for the WARN violation as a successor to Intrepid.

**THIRD CLAIM FOR RELIEF**
**CALFORNIA WAGE LAWS,  CAL. LAB. CODE,**
**§§ 201, 203, 206, 221, 226, 227.3, 558.1**

143. Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs.

144. Plaintiffs seek to recover under California state law for the Defendants' failure to pay wages owed for their final weeks of work, pay unused paid time off, to issue final paystubs, to maintain accurate work records and failure to provide wage statements. Plaintiffs also seek waiting time and related penalties for Defendants' failure to pay earned wages immediately upon termination, in violation of Cal. Lab. Code §§ 201, 206, 226 and 227.3.  Plaintiffs also seek to recover for Defendant's unlawful withholding of health insurance premiums from their paychecks during the period of lapsed coverage, in violation of Cal. Lab. Code § 221.

145. Upon information and belief, the Individual Defendants, together with Defendant Intrepid Studios and Defendant TFE, exercised control over the workers' wages (including the decision over whether to pay out the vacation wages upon termination), hours, or working conditions, (b) suffered and permitted them to work, and/or (c) engaged them, thereby creating a common law employment relationship.

146. Pursuant to Cal. Lab. Code §§ 201 and 227.3, upon the discharge of Plaintiffs and the other similarly situated former employees on February 2, 2026, their earned and unpaid wages, including unused vacation pay, became due and payable immediately.

SECOND AMENDED CLASS ACTION COMPLAINT

147.    Pursuant to Cal. Lab. Code § 203, Defendants' failure to issue to Plaintiffs and the other similarly situated former employees their final paychecks, in full and itemized statements upon discharging them from their employment, as required by Cal. Lab. Code § 201, renders Defendants liable for waiting time penalties.

148.    Defendants' failure to pay accrued vacation wages upon termination represents a violation of Cal. Labor Code §§ 201 and 227.3 (and IWC Wage Order 8) and as such are liable under Cal. Labor Code § 203 and 256 for waiting time penalties of up to 30 days' wages.

149.    In violation of Cal. Lab. Code § 206, the Individual Defendants caused Defendant Intrepid Studios and Defendant TFE to fail to immediately pay Plaintiffs and the other similarly situated former employees their undisputed wages in a dispute.

150.    In violation of Cal. Lab. Code § 221, Defendants' withholding of health insurance premium amounts from employees' paychecks, while not making the required payments for health coverage, was an unlawful deduction from the employees' wages.

151.    Upon information and belief, the Individual Defendants caused Defendant Intrepid Studios and Defendant TFE to fail to provide itemized wage statements to Plaintiffs and the other similarly situated former employees accurate itemized statements in compliance with Cal. Labor Code § 226(a), which requires writings showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of their social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Cal. Labor Code § 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the

SECOND AMENDED CLASS ACTION COMPLAINT

employee.

152.    Plaintiffs were personally harmed by Individual Defendants' intentional and willful violation of Cal. Labor Code § 226's requirement to provide detailed wage statements and are seeking remedies for themselves and all others similarly situated pursuant to 226.6.

153.    The Individual Defendants, as officers, agents, employees, fiduciaries, or other persons who had the control, receipt, custody, or disposal of, or pays, the wages due to Plaintiff and those similarly situated, and who knowingly and intentionally participated or aided in the violation of Cal. Lab. Code §226, are each liable pursuant to Cal. Labor Code § 226.6.

154.    Pursuant to Cal. Labor Code § 558.1 (a), "[a]ny employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation."

155.    The Individual Defendants, each of whom was a natural person who was an owner, director, officer, or managing agent of the employer Intrepid Studios, who violated, or caused to be violated, Section 203 and 226, are each liable as the employer for such violations, pursuant to Cal. Labor Code § 558.1.

156.    Plaintiffs will seek to certify a subclass of these similarly situated individuals to the extent necessary.

157.    In the alternative, Defendant TFE assumed Intrepid's liabilities when it foreclosed on Intrepid's assets, intending to continue Intrepid's operations and with notice of the Labor Code violations.

158.    On information and belief, Intrepid is unable to provide adequate relief to the class members.

159.    As such, Defendant TFE is liable for the Labor Code violations as a successor to Intrepid.

SECOND AMENDED CLASS ACTION COMPLAINT

**FOURTH CLAIM FOR RELIEF**
**OHIO WAGE LAWS: OHIO REVISED CODE § 4113.15**

160.    Plaintiffs reallege and incorporate by reference all allegations in all proceeding paragraphs.

161.    Plaintiffs seek to recover under Ohio state law for Defendants' failure to pay wages owed for their final weeks of work, unused paid time off, and to issue a final paystub, and waiting time penalties, for themselves and the other similarly situated employees who worked in Ohio.

162.    Pursuant to Ohio Revised Code § 4113.15, upon the discharge of Plaintiffs and the other similarly situated former employees on February 2, 2026, their earned and unpaid wages, commissions, bonuses, and unused vacation pay (unless a clear, written, enforceable policy for forfeiture of unused vacation exists), became due and payable by the next scheduled payday or within 15 days, whichever is later.

163.    Defendants were also required, pursuant to Ohio law, to issue to Plaintiff Jacob Burdecki and the other similarly situated former employees their final paychecks, in full and itemized statements, upon discharging them from their employment on February 2, 2026, but failed to do so.

164.    Defendants, as the employer that willfully failed to pay in accordance with Ohio Revised Code § 4113.15, are liable to Plaintiff Burdecki and the other similarly situated former employees for damages and penalties.

165.    Plaintiffs will seek to certify a subclass of these similarly situated individuals to the extent necessary.

166.    In the alternative, Defendant TFE assumed Intrepid's liabilities when it foreclosed on Intrepid's assets, intending to continue Intrepid's operations and with notice of the Ohio Wage Law violations.

167.    On information and belief, Intrepid is unable to provide adequate relief to the class members.

168.    As such, Defendant TFE is liable for the Ohio Wage Law violations as a successor to Intrepid.

SECOND AMENDED CLASS ACTION COMPLAINT

## FIFTH CLAIM FOR RELIEF
### ERISA BREACH OF FIDUCIARY DUTY (29 U.S.C. § 1104)

169.   Intrepid's health insurance policy was an employee welfare benefit plan as defined by ERISA.

170.   Defendants were fiduciaries who exercised discretionary authority or control with respect to the management or administration of the plan.

171.   Defendants had a fiduciary duty to make the required payments to maintain coverage, pursuant to 29 U.S.C. § 1104, withhold employees' earning strictly for the purpose of paying their share of continued coverage, and to inform them of any changes in coverage.

172.   Defendants breached their fiduciary duty to Plaintiffs and similarly situated employees by failing to make the required premium payments, enriching themselves with employees' earnings, and misinforming them that their contributions were being made to maintain coverage, instead of informing them that they were uninsured.

173.   Plaintiffs and the similarly situated employees suffered harm as the direct result of Defendants' actions and inactions, by forcing them to lose their insurance coverage and misappropriate their funds without their knowledge.

174.   Pursuant to 29 U.S.C. § 1132(a)(2), Plaintiffs and the similarly situated employees are authorized to seek appropriate relief for Defendants' breach of their fiduciary duties.

## SIXTH CLAIM FOR RELIEF
### FRAUD

175.   By continuing to withhold health insurance premium amounts from the employees' paychecks, Defendants falsely represented to the employees that Defendants were maintaining the employees' health insurance coverage.

176.   Defendants knew that these representations were false at the time that they made these representations. They knew or should have known that employees relied on these representations to incur medical expenses that insurance would have covered.

177. Defendants made these false representations with the intent to defraud and deceive the employees, by inducing them to continue working for Intrepid while it pocketed their monies and exposed them to personal liability for the medical bills they incurred.

178. The employees relied on Defendants' false representations when they allowed these withholdings and sought medical care under the belief that they were covered by the company-provided insurance.

179. The employees' reliance on Defendants' representations concerning the maintenance of the insurance was justified based on, among other things, their paystubs showing their deducted amounts purportedly for insurance contributions, their course of dealing and Defendants' fiduciary responsibilities.

180. Plaintiffs and the similarly situated employees suffered harm as the direct result of Defendants' false representations, including wrongful, malicious withholdings from their paychecks and substantial medical expenses.

181. In making these false representations, Defendants acted with oppression, fraud, and malice, entitling Plaintiffs and similarly situated employees to actual and punitive damages pursuant to California Civil Code § 3294.

182. On information and belief, Individual Defendants' false representations to the employees were made through the California-based Defendant Intrepid.  As such, all employees may assert California fraud claims against the Defendants.

183. Alternatively, and to the extent necessary, Plaintiffs will seek to certify a subclass of similarly situated individuals residing outside of California to assert claims under the state fraud laws of their respective resident states.

## SEVENTH CLAIM FOR RELIEF
### CONVERSION

184. Plaintiffs and the similarly situated employees had ownership of, and a right to possess, the monies which Defendants took from their pay under the pretense of maintaining their health insurance coverage.

SECOND AMENDED CLASS ACTION COMPLAINT

185. By continuing to withhold these amounts from the employees' paychecks while not making required payments to ensure health insurance for the employees, Defendants wrongfully exerted dominion over those pay amounts in a manner inconsistent with the property rights of Plaintiffs and the similarly situated employees.

186. Plaintiffs and the similarly situated employees suffered harm as the direct result of Defendants' unwarranted interference with their property rights, including the loss of the pay amounts and substantial, foreseeable medical expenses arising from their lack of coverage.

187. Defendant's unlawful conversion of property entitles Plaintiffs and the similarly situated employees to damages under Cal. Civ. Code § 3336.

188. Employees who incurred medical expenses arising from their lack of coverage are entitled to indemnification of those expenses under § 3336 because those expenses are natural, reasonable and proximate results of Defendant's conversion of the withholding amounts. These expenses far surpass the value of the converted withholdings themselves, rendering the latter a manifestly unjust measure of damages.

189. The damages to which Plaintiffs and the similarly situated employees are entitled under § 3336 include emotional distress damages.

190. Defendants converted these pay amounts with oppression, fraud, and malice. Defendants were on notice that the insurance coverage would lapse without required payments. While not making those payments, Defendants maintained a mirage of health insurance coverage to induce employees to continue working. Plaintiffs and similarly situated employees are thus entitled to punitive damages pursuant to Cal. Civ. Code § 3294.

191. On information and belief, Defendants received the wrongful withholding amounts. As such, their conversion of these amounts constitute a civil violation of Cal. Pen. Code § 496, entitling Plaintiffs and the similarly situated employees to treble damages.

192. On information and belief, Individual Defendants' conversions were effectuated through the California-based Defendant Intrepid. As such, all employees may assert California conversion claims against the Defendants.

SECOND AMENDED CLASS ACTION COMPLAINT

193.    Alternatively, and to the extent necessary, Plaintiffs will seek to certify a subclass of similarly situated individuals residing outside of California to assert claims under the state conversion laws of their respective resident states.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs, on behalf of themselves and all other similarly situated persons, pray for the following relief as against Defendants:

A.    Certification that, pursuant to Fed. R. Civ. P. 23 (a) and (b), Plaintiffs and the other similarly situated former employees constitute a single class;

B.    Designation of the Plaintiffs as Class Representatives;

C.    Appointment of the undersigned attorneys as Class Counsel;

D.    A judgment in favor of Plaintiffs and each of the "affected employees" equal to the sum of: their unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then-applicable employee benefit plans had that coverage continued for that period, and reimbursement for expenses incurred by the employees which they would not have incurred had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(1)(4), California Labor Code § 1402(a), Ohio Revised Code § 4113.15, and all relevant state laws;

E.    A judgment in favor of Plaintiffs and each similarly situated employee whose rights under Cal. Lab. Code §§ 201, 206, 226, and 558.1, for wages owed, waiting time penalties, and all associated remedies, including without limitation, unpaid principal amounts, penalties, injunctive relief, interest and attorney's fees and costs, under the Labor Code §§ 203, 226(e), 226(h), 226.3, 226.6, 227.3, and 558.1;

F.    A judgment in favor of all similarly-situated employees for any unpaid wages and accrued vacation or paid time off benefits, under the laws of the respective states in which they worked prior to their termination on or about February 2, 2026.

G.  A judgment in favor of Plaintiffs and similarly-situated employees for appropriate equitable relief under ERISA for Defendants' failure to maintain the employees' health insurance coverage.

H.  Alternatively, a judgment in favor of Plaintiffs and all similarly-situated employees for actual and punitive damages arising from Defendant's fraudulent representations concerning their health insurance coverage, including medical expenses incurred by the employees when their coverage had lapsed.

I.  Alternatively, a judgment in favor of Plaintiffs and all similarly-situated employees for actual, treble and punitive damages arising from Defendant's conversion of the health insurance withholding amounts, including medical expenses incurred by the employees when their coverage had lapsed.

J.  Interest as allowed by law on the amounts owed under the preceding paragraphs;

K.  Plaintiffs' reasonable attorneys' fees and the costs and disbursements that the Plaintiffs incurred in prosecuting this action, as authorized by the WARN Act, 29 U.S.C. § 2104(a)(6), Cal. Lab. Code § 1404, and all relevant state laws; and

L.  Such other and further relief as this Court may deem just and proper.

DATED: July 20, 2026            Respectfully submitted,

By: /s/ *Gail C. Lin*
Gail C. Lin (SBN 212334)
RAISNER ROUPINIAN LLP
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: gcl@raisnerroupinian.com

Jack A. Raisner (*pro hac vice*)
René S. Roupinian (*pro hac vice*)
RAISNER ROUPINIAN LLP
270 Madison Avenue, Suite 1801
New York, NY 10016
Telephone: (212) 221-1747
Fax: (212) 221-1747
Email: jar@raisnerroupinian.com
Email: rsr@raisnerroupinian.com

*Attorneys for Plaintiffs and the other similarly situated former employees*

SECOND AMENDED CLASS ACTION COMPLAINT