Peter B. Maretz (SBN 144826)
Oswaldo X. Calvachi (SBN 336680)
JACKSON LEWIS P.C.
225 Broadway, Suite 1800
San Diego, California 92101
Telephone: (619) 573-4900
Facsimile: (619) 573-4901
Peter.Maretz@jacksonlewis.com
Oswaldo.Calvachi@jacksonlewis.com

Attorneys for Defendant
STEVEN SHARIF

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB BURDECKI and ZAKARY STRANGE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTREPID STUDIOS, INC., STEVEN SHARIF, RYAN OGDEN, AARON BARTELS, THERESA FETTE, ROBERT D. DAWSON, and TFE GAMES HOLDING, LLC,<br><br>Defendants. | Case No.: 3:26-cv-00728-AGS-VET<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 9(b) AND 12(b)(6)**<br><br>*[Filed concurrently with Notice of Motion; Declaration of Oswaldo X. Calvachi; and [Proposed] Order]*<br><br>Hearing Date: December 2, 2026<br>Time: 11:00 a.m.<br>District Judge: Andrew G. Schopler<br>Magistrate Judge: Valerie E. Torres<br>Location/Courtroom: 5C<br><br>Complaint filed: February 5, 2026<br>Trial Date: Not Assigned |

# I. INTRODUCTION

Defendant Steven Sharif ("Mr. Sharif") respectfully submits this memorandum in support of his motion to dismiss the Second Amended Class Action Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

The SAC alleges that Intrepid Studios, Inc. ("Intrepid") terminated Plaintiffs and other employees in February 2026, did not pay final wages and accrued paid time off, and allowed employee health coverage to lapse while payroll deductions continued. But the SAC does not plead facts establishing that Mr. Sharif, as opposed to Intrepid or other defendants, is liable under each cause of action asserted against him. The pleading repeatedly relies on collective allegations against "Defendants" and conclusory assertions that Mr. Sharif was an employer, fiduciary, or participant in alleged wrongdoing. Those assertions do not satisfy Rules 8, 9(b), or 12(b)(6).

The SAC itself limits the federal WARN Act claim to Intrepid and TFE Games Holding, LLC ("TFE"). Mr. Sharif therefore does not move against the First Claim for Relief. The remaining claims against him should be dismissed. The California WARN claim does not allege facts plausibly showing that Mr. Sharif both owned and operated the covered establishment when the challenged layoff was ordered. The California wage claim improperly extends Labor Code section 558.1 beyond its enumerated provisions and does not plead Mr. Sharif's personal participation in an actionable wage statement violation. The Ohio wage claim identifies no cognizable basis to disregard Intrepid's corporate form or otherwise impose its wage debt upon Mr. Sharif individually.

The ERISA claim alleges only that all defendants were fiduciaries; it does not identify a plan fiduciary role, discretionary authority over the plan, or authority or control over plan assets exercised by Mr. Sharif in connection with the challenged conduct. The fraud claim does not identify a misrepresentation or actionable omission by Mr. Sharif with the particularity Rule 9(b) requires. The conversion claim does not plead that Mr. Sharif personally exercised dominion over an identifiable sum belonging to either Plaintiff. The fraud and conversion theories also seek alternative state law relief for the alleged

administration and lapse of an ERISA governed health plan and are preempted to the extent they depend on plan duties and benefits.

For these reasons, Mr. Sharif requests dismissal of the Second through Seventh Claims for Relief against him.

## II. **BACKGROUND**

Plaintiffs Jacob Burdecki and Zakary Strange allege that they worked for Intrepid, an entity in the gaming and entertainment industry based in San Diego. (SAC ¶¶ 1, 15-18.) Plaintiffs allege that they and approximately 200 other employees were terminated on or about February 2, 2026, without sixty days' written notice. (*Id*. ¶¶ 2-3, 19-22, 77-79.)

The SAC alleges that, "at all relevant times," Mr. Sharif was the co-founder, Chief Executive Officer, Game Director, and a member of the Board of Directors of Intrepid, and that he owned 4.888 percent of its shares. (*Id*. ¶ 23.) The SAC further alleges that Defendant Robert D. Dawson ("Dawson"), who owned 65.688 percent of Intrepid's shares, caused TFE to foreclose on Intrepid's assets on or about January 16, 2026. (*Id*. ¶¶ 26-29.)

Critically, the SAC alleges that Mr. Sharif took a temporary leave from his CEO duties in October 2025 for health reasons and formally resigned as CEO in mid-January 2026. (*Id*. ¶¶ 23, 29-30.) The SAC alleges that, although Mr. Sharif formally resigned from his CEO position in mid-January 2026, he continued to serve as a conduit between management and the other Individual Defendants. (*Id*. ¶ 30.)

The SAC asserts the First Claim for Relief under the federal WARN Act against Intrepid and TFE only. (*Id*. ¶¶ 15-17.) It asserts its Second Claim for Relief under the California WARN Act, Third Claim for Relief under California wage statutes, Fourth Claim for Relief under Ohio Revised Code section 4113.15, Fifth Claim for Relief under ERISA, Sixth Claim for Relief for fraud, and Seventh Claim for Relief for conversion against "Defendants" collectively. (*Id*. ¶¶ 133-193.)

///

///

///

## III. LEGAL ARGUMENT

### A. Motion to Dismiss Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a claim presented in the complaint. (*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).) Where there is a "lack of a cognizable legal theory" or an "absence of sufficient facts alleged under a cognizable legal theory," dismissal under Rule 12(b)(6) is proper. (*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).) On a motion to dismiss pursuant to Rule 12(b)(6), the courts are "not bound to accept as true a legal conclusion couched as a factual allegation." (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." (*Twombly*, 550 U.S. at 570.) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).) Although "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." (*Id.* (quoting *Twombly*, 550 U.S. at 556).) Naked assertions, "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." (*Twombly*, 550 U.S. at 555.)

Where a complaint involves multiple defendants, it "must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." (*United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997-98 (9th Cir. 2011).) When alleging a claim for fraud, Rule 9(b) requires that "the who, what, when, where, and how of the misconduct charged" be stated with particularity. (*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).)

///

///

///

### B. <u>The SAC Fails to State a Claim Against Mr. Sharif under the California Warn Act</u>

The California WARN Act defines "employer" as a person who "directly or indirectly owns and operates a covered establishment." (Cal. Labor Code section 1400.5(b).) The conjunctive "owns AND operates" requires both ownership and operational control. (*Id.*) Cal. Labor Code section 18 defines "person" to include "any person, association, organization, partnership, business trust, limited liability company, or corporation."

No published California case has imposed individual liability under the California WARN Act. (*Reynolds v. Direct Flow Med., Inc.*, No. 17-cv-00204-KAW, U.S. Dist. LEXIS 149865, at *10-11 (N.D. Cal. Sept. 3, 2019) (approving settlement and noting litigation risks associated with individual officer/director liability claims under Cal. WARN); *In re United Furniture Indus.*, No. 22-13422-SDM, 2025 Bankr. LEXIS 945, at *37 (Bankr. N.D. Miss. 2025) (recognizing possible individual California WARN liability but finding disputed operational facts precluded summary judgment).)

Plaintiffs may point to *Su v. Capital Mailing Servs.*, 2024 Cal. App. Unpub. LEXIS 7577, but that case is both unpublished and distinguishable. In *Su*, the defendant was the sole owner who simultaneously served as CEO, president, CFO, and secretary, and who personally withdrew company funds on the day employees were sent home. (*Id.* at 1-2, 14-15.) Mr. Sharif's circumstances are materially different: he held a mere 4.888 percent minority ownership interest, compared to 100 percent sole ownership in *Su*, and had formally resigned as CEO before the layoffs occurred. The SAC does not allege that Mr. Sharif exercised any operational authority at the time of the February 2, 2026 layoffs.

The statute requires that a person "directly or indirectly owns AND operates" the covered establishment. Mr. Sharif's 4.888% minority interest and resigned status cannot satisfy either prong. He did not "operate" Intrepid at the time of the layoffs, as he had already resigned. The SAC's own allegations distinguish Mr. Sharif from the defendants alleged to have controlled the decisive business conduct. Plaintiffs allege that the Investor-

Owner Defendants controlled Intrepid funding, directed proposed terminations, and influenced company decisions regarding layoffs. (SAC ¶¶ 43-44, 50-63.) The SAC also alleges that Mr. Sharif formally resigned as CEO in mid-January 2026. (*Id.* ¶ 30. Assertions of post resignation influence, communications, or participation in discussions do not plausibly establish that Mr. Sharif personally operated the establishment at the relevant time or ordered the alleged February 2026 layoff.

Therefore, the Second Cause of Action fails to state a claim for relief against Mr. Sharif and should be dismissed.

### C. <u>The SAC Fails to State a Claim Against Mr. Sharif Under California Labor Code Sections 201, 203, 206, 221, 226, 227.3, and 558.1</u>

The Third Cause of Action asserts claims under multiple California Labor Code provisions. To the extent the SAC seeks to impose individual liability on Mr. Sharif under Section 558.1, that provision applies only to enumerated violations, specifically Sections 203 and 226, and does not cover Section 221 (unlawful deductions). The SAC's attempt to sweep all wage claims under Section 558.1 exceeds the statute's scope. Section 558.1 requires that an individual owner, director, officer, or managing agent have violated or caused the enumerated violation; status alone does not suffice. (*Usher v. White*, 64 Cal.App.5th 883, 895-897 (2021); *Espinoza v. Hepta Run, Inc.*, 74 Cal.App.5th 44, 59-60 (2022).)

As to Section 226, the SAC fails to allege that Mr. Sharif personally prepared, controlled, approved, or caused the issuance of any inaccurate wage statement. Section 226 requires that an employer "knowingly and intentionally" fail to provide compliant wage statements. (Cal. Labor Code section 226(e).) The SAC contains no particularized allegations of Mr. Sharif's personal involvement in payroll operations or wage statement preparation. The SAC's allegations that Mr. Sharif previously held executive positions, received insurance renewal communications, or discussed employee matters do not bridge the gap between a corporate officer's status and the required personal conduct. Without such allegations, individual liability under Section 558.1 for a Section 226 violation cannot

stand.

The SAC's alternative employer theory (SAC ¶ 145) does not cure the deficiency. The IWC definition of employer does not impose individual liability merely because a corporate agent exercises employment authority within that agency. (*Martinez v. Combs*, 49 Cal.4th 35, 75 (2010).) The SAC describes Mr. Sharif acting on behalf of Intrepid; it does not identify a separate employing undertaking by him personally.

Therefore, the Third Cause of Action fails to state a claim for relief against Mr. Sharif and should be dismissed.

**D. <u>The SAC Fails to State a Claim Against Mr. Sharif Under Ohio Revised Code Section 4113.15</u>**

Ohio Rev. Code section 4113.15 imposes liability on the "employer" and defines the term to include "an individual, firm, partnership, association, or corporation." However, the Ohio Supreme Court has held that "the principle that shareholders, officers, and directors of a corporation are generally not liable for the debts of the corporation is ingrained in Ohio law." (*Dombroski v. Wellpoint, Inc.*, 895 N.E.2d 538, 542 (Ohio 2008).)

Ohio courts have consistently held that personal liability in the corporate context requires clear and unambiguous statutory language. (*See Soltesiz v. Tracy*, 663 N.E.2d 1273, 1275 (Ohio 1996).) Ohio Rev. Code section 4113.15 lacks such language. In *Armstrong v. Trans-Service Logistics Inc.*, 2005 Ohio App. LEXIS 2565, the court found that even a statute defining "employer" to include "an agent of an employer" limited liability to the corporate entity through respondeat superior, not individual liability. Similarly, in *Strongsville v. Brookfield Homes, Inc.*, 470 N.E.2d 473 (8th Dist. 1984), the court held it was error to impose joint liability on a corporate officer despite a broad "employer" definition.

Moreover, Mr. Sharif had resigned before the layoffs occurred and had no authority to do anything after his resignation. (*See Warren v. Sanfrey*, 605 N.E.2d 413, 414-15 (Ohio Ct. App. 1992) (corporate president who resigned not personally liable for corporation's non-compliance).)

Therefore, the Fourth Cause of Action fails to state a claim for relief against Mr. Sharif and should be dismissed.

**E. The SAC Fails to State a Claim Against Mr. Sharif for ERISA Breach of Fiduciary Duty**

The Fifth Cause of Action asserts breach of fiduciary duty under ERISA (29 U.S.C. section 1104). ERISA fiduciary status is functional and activity specific. (*Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).) A person is an ERISA fiduciary only to the extent that he exercises any discretionary authority or discretionary control respecting management of a plan, exercises any authority or control respecting management or disposition of plan assets, or has any discretionary authority or discretionary responsibility in the administration of a plan. (29 U.S.C. section 1002(21)(A).)

The SAC fails to identify: (1) the governing plan documents; (2) the named fiduciary or plan administrator; (3) any plan responsibility specifically assigned to Mr. Sharif; (4) the source of his alleged authority over health insurance premiums; or (5) any plan assets he allegedly controlled. The SAC alleges that HR sent Mr. Sharif renewal reminders to which he did not respond, but inaction in the face of internal communications does not establish discretionary authority over a plan. (*See Del Castillo v. Cmty. Child Care Council*, No. 17-cv-05765-WHO, 2018 U.S. Dist. LEXIS 87236 (N.D. Cal. 2018) (dismissing ERISA fiduciary claims where allegations failed to connect authority to fiduciary function).)

Moreover, Section 1132(a)(2) provides plan level relief (i.e., recovery to the plan) not individualized compensatory damages to participants. The SAC's prayer for individual compensatory relief is not cognizable under this provision.

Independently, Section 1132(a)(2), invoked in paragraph 174 of the SAC, does not authorize individualized consequential damages merely because participants incurred uncovered medical bills. (*Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140-144 (1985).) That provision ordinarily provides for restoration of losses to the plan. (See *CIGNA Corp. v. Amara*, 563 U.S. 421, 440-442 (2011).) Neither possibility cures the

absence of allegations establishing Mr. Sharif's relevant fiduciary responsibility, breach, and causation.

Therefore, the Fifth Cause of Action fails to state a claim for relief against Mr. Sharif and should be dismissed.

**F. <u>The Fraud Claim Fails Under Rule 9(b) and 12(b)(6)</u>**

The Sixth Cause of Action asserts fraud. Where a complaint involves multiple defendants, it "must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme." (*United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997-98 (9th Cir. 2011).) Rule 9(b) requires that "the who, what, when, where, and how of the misconduct charged" be stated with particularity. (*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).)

The SAC does not allege that Mr. Sharif: (i) prepared, approved, or issued any paystubs; (ii) authorized payroll deductions; (iii) communicated with Plaintiffs regarding coverage status; (iv) directed any concealment of the health insurance lapse; or (v) controlled the payroll system. The SAC does not identify when Mr. Sharif learned that health insurance coverage had actually lapsed. Failure to respond to internal HR communications does not constitute a particularized fraudulent representation to Plaintiffs.

Therefore, the Sixth Cause of Action fails to state a claim for relief against Mr. Sharif and should be dismissed.

**G. <u>The Conversion and Penal Code Section 496 Claim Fails Against Mr. Sharif</u>**

The Seventh Cause of Action asserts conversion and a claim under Penal Code section 496. Conversion of money requires an ownership or possessory interest in a specific, identifiable sum and the defendant's wrongful exercise of dominion over those funds. (*Voris v. Lampert*, 7 Cal. 5th 1141, 1150-53 (2019).) The SAC does not identify: the amounts deducted from the named plaintiffs, the dates of deduction, where the funds were held, whether the funds became plan assets, or any act by which Mr. Sharif received, possessed, transferred, or withheld the funds.

As to Penal Code § 496, a plaintiff must allege that the defendant knowingly received stolen property. (*Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 361-62 (2022).) The SAC does not allege Mr. Sharif's personal receipt, possession, knowledge of theft, or concealment of any specific funds.

Therefore, the Seventh Cause of Action fails to state a claim for relief against Mr. Sharif and should be dismissed.

### H. <u>ERISA Preempts the Fraud and Conversion Claims</u>

Even if the fraud and conversion claims otherwise survived scrutiny, they are preempted by ERISA section 514 (29 U.S.C. section 1144(a)), which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The fraud and conversion claims arise from the same conduct as the ERISA claim: the alleged failure to maintain the health plan, misuse of employee contributions, and failure to disclose the lapse of coverage. Adjudicating the state law claims would necessarily require determining plan obligations, the proper application of employee contributions, and coverage questions governed by ERISA. (*See Del Castillo*, 2018 U.S. Dist. LEXIS 87236 (dismissing state law fraud and conversion claims as ERISA preempted).)

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Mr. Sharif respectfully requests this Court grant the instant Motion dismissing the Second through Seventh Causes of Action of the Second Amended Complaint against him, individually, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

DATED: September 14, 2026

JACKSON LEWIS P.C.

By:____________________________
Peter B. Maretz
Oswaldo X. Calvachi

Attorney for Defendant
STEVEN SHARIF